UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:22-cr-00249-LCB-HNJ-1 |
| ) | |
| **KENNETH MICHAEL MININGER,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

Kenneth Michael Mininger moved to suppress evidence obtained from a warrantless search of two SD cards seized from his ex-wife's home in South Carolina; evidence obtained from search warrants issued for Mininger's person and residence in Florence, Alabama; and evidence obtained from searches of Mininger's electronic devices that occurred after the 10-day expiration period for executing the search warrants. (Doc. 43). After initial briefing, the magistrate judge assigned to this case conducted a hearing, allowed supplemental briefing, and entered a report and recommendation that this Court deny Mininger's motion. (Doc. 62). Mininger filed timely objections to the report and recommendation. (Doc. 63).

Having reviewed *de novo* the entirety of the record, the Court hereby **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. (Doc.

62). Accordingly, the Court **OVERRULES** Mininger's objections and **DENIES** his motion to suppress. (Doc. 43).

## I.     Background

The magistrate judge's report thoroughly lays out the factual background needed to understand the issues Mininger raises. Thus, it is unnecessary to give an exhaustive recitation of those facts here. However, the Court will recount the report's summary of the facts for context:

> On November 27, 2021, the Greenville County Sheriff's Office responded to the home of S.H. in South Carolina. Mininger, a resident of Alabama, traveled to South Carolina to visit S.H. (Mininger's ex-spouse) and her minor children. During the visit, S.H.'s daughter discovered two cameras disguised as USB charging blocks in her bedroom and in a hall bathroom shared by S.H.'s children with open access to everyone. The daughter removed the SD cards from the cameras and viewed footage of her bedroom on one of the cards. Mininger admitted planting the cameras. He left the home with one of the cameras in his possession, but S.H. kept the other camera and both SD cards. S.H. signed a consent form to allow officers to search the cards. Both cards contained images of child pornography.
>
> Based on the events of November 27 and the images found on the SD cards, the Florence Police Department obtained search warrants for Mininger's person and residence in Lauderdale County, Alabama. Officers seized 170-200 computers and storage media devices from Mininger's home. Based on off-site forensic examination conducted largely after the warrants' 10-day execution deadline, officers located hundreds of images of child pornography.

(Doc. 62 at 1-2).

## II.    Objection One

Mininger first argues the report wrongly concluded that officers obtained third-party consent to search the SD cards because S.H. denied that they belonged to her. Accordingly, Mininger argues, there is no basis to conclude that S.H. had mutual use or joint access or control to the SD cards, regardless of where they were found in the house or whether they were password protected. In support of this argument, Mininger cites two non-binding cases: *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996) and *United States v. Salinas-Cano*, 959 F.2d 861 (10th Cir. 1992). However, binding and persuasive Eleventh Circuit caselaw points to a different conclusion.

For starters, S.H. disclaiming ownership of the SD cards bears little probative value— "[c]ommon authority is . . . not to be implied from the mere property interest a third party has in the property," because the "authority which justifies the third-party consent does not rest upon the law of property." *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (citations omitted). Instead, common authority "rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* Put simply, "the touchstone of the third-party consent rule is assumption of the risk"

that a third party might allow a search. *United States v. Thomas*, 818 F.3d 1230, 1242 (11th Cir. 2016).

Relying on that principle, "courts have found valid [third-party] consent to a search where the defendant failed to password-protect a computer that was shared with other users or located in a common area." *United States v. Waddell*, 840 F. App'x 421, 431 (11th Cir. 2020) (citation omitted). And the Eleventh Circuit has repeatedly cited to *United States v. Stabile*, 633 F.3d 219, 232-33 (3d Cir. 2011), which held that valid third-party consent existed to search and seize computer hard drives when the defendant did not password-protect the computers and the computers were in a common area of the house. *See, e.g.*, *United States v. Thomas*, 818 F.3d 1230, 1241 (11th Cir. 2016).

Here, Mininger's SD cards were not password-protected, and were in a hall bathroom shared by the children and a bedroom in which Mininger possessed no privacy interest. *United States v. Marchante*, 514 F. App'x 878, 881-82 (11th Cir. 2013) (holding a third party possessed common authority over a thumb drive located in a shared nightstand, even though the third party disclaimed ownership, because "[t]here was no evidence the thumb drive was encrypted or locked such that [the third party] could not access it"). As a result, S.H. had common authority over the SD cards and gave valid third-party consent for them to be searched. Therefore, Mininger's objection is **OVERRULED**.

## III.     Objection Two

Next, Mininger argues the report wrongly concluded that the Lauderdale County warrants were not unconstitutionally overbroad. Specifically, Mininger takes issue with the finding that officers had probable cause "to search any device in Mininger's residence capable of producing, distributing, or storing child sexual abuse material" on grounds that such material "can be transferred directly onto a computer" and "can be distributed through the Internet." (Doc. 63 at 3). Mininger further argues that law enforcement had no basis to justify the searches of all his computers, media, and data storage devices without limitation because (1) there was no nexus between the crime for which investigators had probable cause and the broad categories of items to be seized and searched, and (2) the warrants failed to limit the items subject to seizure with reference to a particular timeframe. *Id.* at 4. Neither of Mininger's arguments on this front are availing because the warrants fully complied with the requirements of the Fourth Amendment.

As an initial matter, "[t]he Fourth Amendment requires searches be as limited as possible, and the goal is to prevent 'rummaging' through a person's belongings by requiring warrants to include a particular description of the things to be seized." *United States v. Alford*, 744 F. App'x 650, 652 (11th Cir. 2018) (citing *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017)). "[T]here are generally two types of limitations that can particularize such a warrant," one of which "is narrowing the

5

search based on the subject matter." *United States v. McCall*, 84 F.4th 1317, 1327 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1042 (2024).

This kind of subject-matter limitation is particularly important for searches of electronic devices, "which implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" because of their "immense storage capacity." *Riley v. California*, 573 U.S. 373, 393 (2014). "For example, a warrant may limit investigators' search of communications data to only communications with known or suspected co-conspirators." *McCall*, 84 F.4th at 1327. (citation omitted). And such "a warrant limiting a search to communications between a suspect and his coconspirator—a subject-based limitation—does not require that the only categories of searchable data be instant messages or emails" because "communications between individuals may be stored in various data formats, including voice memos, shared notes folders, or screenshots of prior conversations in an images folder." *Id.*

Here, the warrants limited law enforcement's search to "*only* those items pertinent to an investigation related to child pornography." *United States v. Brooks*, 648 F. App'x 791, 793 (11th Cir. 2016) (emphasis in original). Limiting a search to only potentially incriminating evidence has been found to satisfy the particularity requirement. *See Alford*, 744 F. App'x at 653 (holding that although a warrant "requested nearly every kind of data that could be found in a Google account," it

was as specific as the circumstances and nature of the activity under investigation permitted because "the information requested was all potentially incriminating"); *Blake*, 868 F.3d at 973 (concluding a warrant requiring Microsoft to turn over all e-mails containing potentially incriminating evidence was constitutional because that limitation prevented a general rummaging through the defendant's e-mails); *United States v. Carroll*, 886 F.3d 1347, 1352 (11th Cir. 2018) ("[Defendant] contends that the warrant permitted a general search of his home, but the warrant afforded the officers little latitude when it authorized the seizure of computers, related storage devices, and other media which might contain evidence of child pornography."); *cf. Blake*, 868 F.3d at 974 (concluding warrants requiring Facebook to disclose "virtually every kind of data that could be found in a social media account" were unconstitutional because the warrants could have limited the search of private messages to only those sent or received from persons suspected of being involved with the offense).

Mininger's true contention, however, appears to be that the warrants authorized the seizure of items broader than appropriate—all his computers, media, and data storage devices—which is a probable cause issue, not a particularity one. *United States v. Schwinn*, 376 F. App'x 974, 980 (11th Cir. 2010) (citation omitted). Here, the warrants are valid because probable cause existed to seize all the items listed in the warrants when they were issued. *Id.* The applications for the warrants

recounted how Mininger allegedly placed secret digital cameras in S.H.'s home and captured pornographic images of her children on his SD cards. (Doc. 55-2 at 2-3; Doc. 55-3 at 3-4). Then, based on the detective's "knowledge, training, and experience in child exploitation and child pornography investigations," along with "the experience and training of other law enforcement officers," one of the applications explained that images of child pornography and exploitation material created with a digital camera can be transferred directly onto a computer. (Doc. 55-3 at 7). Furthermore, "[t]he computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography." (*Id.* at 8). And when using the Internet, "electronic contact can be made to literally millions of [other] computers around the world." (*Id.* at 7). In addition, persons who possess child pornography or exploitation material generally have copies of those files on computer hard drives or computer-related media. (*Id.* at 7-12).

Because Mininger would bring "computers/laptops," and was "seen uploading and scanning different things using USB drives" when he visited S.H. and her children, (*Id.* at 4), it is probable that he was using his "computers/laptops" and "USB drives" in furtherance of his alleged crimes. Moreover, child pornography and exploitation material can be stored in various digital formats, and thus probable cause and a sufficient nexus exists to search all electronic devices capable of containing such material. *See United States v. Touset*, 890 F.3d 1227, 1235-36 (11th

Cir. 2018) ("With the advent of the internet, child pornography offenses overwhelmingly involve the use of electronic devices for the receipt, storage, and distribution of unlawful images . . . And law enforcement officers routinely investigate child-pornography offenses by forensically searching an individual's electronic devices." (citations omitted)); *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) ("Child pornographers typically keep stashes of child pornography in their houses. And traces of child pornography typically remain present on electronic devices long after files are downloaded or sent. That evidence is more than enough to establish probable cause."); *Schwinn*, 376 F. App'x at 979 ("[I]nvestigators and courts frequently rely upon an inference that the suspect is a collector of child pornography—and therefore is unlikely to dispose of his images—to establish that evidence of a crime will be present at some point in the future.").

Turning to the time-based limitation, indeed the warrants do not contain one as Mininger argues. And not only does the Eleventh Circuit believe "the preferred method of limiting the scope of a search warrant for a cloud account will usually be time-based," but that "a time-based limitation [is] both practical and protective of privacy interests." *McCall*, 84 F.4th at 1328. Still, "the circumstances of an investigation may not require any subject- or time-limitation on a cloud warrant or may require that a sufficiently particular warrant [only] include a subject-matter limitation." *Id.* Investigations for child pornography and exploitation material fall

9

into the latter category, in that once there has been a subject-matter limitation, time-limitations are usually not needed because possessors have a propensity to hoard such material. *See United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018) ("[P]edophiles rarely, if ever, dispose of child pornography." (internal quotation marks omitted) (quoting *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002)). Mininger has allegedly displayed having such a propensity because law enforcement discovered hundreds of child pornography and exploitation images on his devices. (*See* DX009). Thus, during investigations involving child pornography and exploitation material, law enforcement is not required to search for only certain images produced, uploaded, downloaded, stored, or distributed during a particular timeframe.

Lastly, Mininger claims that the "good faith exception does not apply because the Lauderdale warrants are so facially overbroad that they could not reasonably be presumed to be valid." (Doc. 63 at 4). The Court disagrees, both because the warrants were not unconstitutionally overbroad as already shown, and if they were, the good faith exception would apply. "The good faith exception may be applied to a search conducted pursuant to an overly broad warrant." *United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000) (citing *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir.1985)). "It . . . does not apply when a warrant is 'so facially deficient—i.e., in failing to particularize the place to be searched or things to be seized—that

10

the executing officers cannot reasonably presume it to be valid.'" *McCall*, 84 F.4th at 1323 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). But it does apply "if the warrant 'adequately conveys its parameters.'" *Id.* at 1328 (quoting *United States v. Delgado*, 981 F.3d 889, 899 (11th Cir. 2020)). Although "there was no facial time limit," law enforcement "reasonably could have believed" the warrants limiting the search to Mininger's computers, media, and data storage devices that could contain evidence of child pornography and exploitation material "fell within the practical margin of flexibility," especially because Mininger was seen using "computers/laptops" and "USB drives" in S.H.'s home. *Id.* Therefore, Mininger's objection is **OVERRULED**.

## IV. Objection III

Finally, Mininger contends that the report wrongly concluded that law enforcement's search of his electronic devices after the warrants' 10-day expiration dates were reasonable. Specifically, Mininger argues that the "warrants here expired on December 6, 2023, upon their return to the magistrate," but cites no statute or caselaw to support his argument. (Doc. 63 at 5). He then turns to his contention that the warrants expired after 10 days at "at most." (*Id.*). Alabama Code § 15-5-12 states a search warrant must be executed within 10 days after its date or otherwise it is void. The warrants at issue here were issued on December 2 and 3, 2021, and executed on December 3, 2021. (Doc. 55-2 at 1, 5-6; Doc. 55-3 at 1, 22-23). While

11

law enforcement searched Mininger's residence and seized his items within the 10-day expiration, they took over 19-months to forensically search all his devices. (Doc. 43 at 5). In any event, this objection also fails because "[i]n the context of electronically stored information . . . [a] warrant is executed when the computer is seized, not when the files are accessed." *Hatfield v. McDaniel*, 2012 WL 5187770, at *6 (M.D. Ala. Oct. 19, 2012).

In *United States v. Carlisle*, for example, law enforcement seized items within the specified 10-day expiration but took over a year to forensically review them. 2017 WL 2021090, at *3 (N.D. Ala. May 12, 2017). The defendant "assert[ed] that law enforcement violated [§ 15-5-12] because the search warrant was not executed within ten days." *Id.* at *5. The court determined, however, "that seizure is the date that an item is physically seized and taken into police custody." *Id.* (quoting *Hatfield*, 2012 WL 5187770, at *6). In addition, "the warrant affidavit clearly indicate[d] that the items seized may be retained for analysis at a later date," although there was no requirement "that the warrant should have indicated that extended retention of the items seized may be necessary." *Id.*

The same is true here. One of the Lauderdale County warrant applications stated computer storage devices can store enormous amounts of information and data; thus, the forensic process "can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data

12

search on-site or even within the period specified for execution of the search warrant." (Doc. 55-3 at 9-10). Accordingly, the application requested "that the court authorize the seizure and the removal of the devices to a laboratory environment for . . . forensic examination." (*Id.* at 4). The warrant granted the request, stating that "detectives may seize all computers and computer-related media to be searched by a qualified examiner in a laboratory or other controlled environment." (*Id.* at 1).

Moreover, no constitutional violation exists here. "[C]onstitutional considerations, rather than the demands of state law, direct [the] resolution of" a Fourth Amendment challenge to a search. *United States v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991). Relevant here, the Fourth Amendment requires only that all searches and seizures be reasonable, *Kentucky v. King*, 563 U.S. 452, 459 (2011), not "*when* [a] search or seizure is to occur or the *duration*," *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993) (emphasis in original). Thus, "[i]n . . . cases where a forensic search of a computer occurred after the 'expiration' of a warrant, courts have been reluctant in suppressing evidence obtained as a result of the forensic search if that search was reasonable under the circumstances." *Schaff v. United States*, No. CV213-072, 2014 WL 3925280, at *13 (S.D. Ga. Aug. 11, 2014) (collecting cases).

The extended forensic search after the 10-day expiration was reasonable here because law enforcement searched Mininger's residence and seized all his devices

before the 10-day expiration, the warrants expressed that the devices would be forensically searched off-site, law enforcement discovered hundreds of child pornography and exploitation images before the 10-day expiration sustaining law enforcement's probable cause (DX009 at 16-19), Mininger's encryption was sophisticated (Doc. 54 at 142-43), and Mininger does not identify any prejudice resulting from the delay. Therefore, Mininger's objection is **OVERRULED**.

## V.  Conclusion

Having reviewed *de novo* the entirety of the record, the Court hereby **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. (Doc. 62). Accordingly, the Court **OVERRULES** Mininger's objections and **DENIES** his motion to suppress. (Doc. 43).

**DONE** and **ORDERED** this July 9, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE